UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CROSS COUNTRY MOTOR CLUB INC. and CROSS COUNTRY MOTOR CLUB OF CALIFORNIA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SYKES CANADA CORPORATION, <br><br> Defendant. | Civil Action No. 05-10086-JLT <br><br> DEFENDANT'S ANSWER AND COUNTERCLAIM |

Defendant Sykes Canada Corporation ("Sykes") hereby answers the Plaintiffs' Complaint as follows. Abbreviations used herein shall have the same meanings as defined in the Plaintiffs' Complaint, unless otherwise stated.

Unnumbered paragraph. The introductory paragraph of Plaintiffs' Complaint states prefatory matter to which no response is required. To the extent that a response is required, Sykes denies each and every allegation contained in the introductory paragraph of Plaintiffs' Complaint.

1. Paragraph 1 of the Plaintiffs' Complaint states a mixture of allegations of fact and conclusions of law. To the extent that Paragraph 1 contains allegations of fact, such allegations are denied. To the extent that Paragraph 1 contains conclusions of law, no response is required; to the extent that a response is required, such conclusions are denied.

2. Paragraph 2 of the Plaintiffs' Complaint states conclusions of law to which no response is required; to the extent that a response is required, such conclusions are denied.

1

3. Sykes lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 3 of the Plaintiffs' Complaint, and accordingly denies same.

4. Sykes lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 4 of the Plaintiffs' Complaint, and accordingly denies same.

5. Sykes admits the allegations contained in Paragraph 5 of the Plaintiffs' Complaint.

6. Sykes admits the allegations contained in Paragraph 6 of the Plaintiffs' Complaint.

7. Sykes admits that NAL desired to expand its business in Canada to include certain automobile manufacturers and distributors with whom Cross Country professed to have business relationships, that NAL had business relationships with certain consumer finance companies, and that NAL believed that it could aid Cross Country in expanding its business with these consumer finance companies. Sykes lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 7 of the Plaintiffs' Complaint, and accordingly denies same.

8. Sykes admits that Cross Country and NAL entered into the Agreement attached to the Complaint as <u>Exhibit 1</u> on or about March 1, 1990. Further answering, Sykes states that the text of the Agreement is contained in the Agreement and denies all allegations contained in Paragraph 8 of the Plaintiffs' Complaint that are inconsistent with the text of the Agreement. Sykes denies any and all remaining allegations contained in Paragraph 8 of the Plaintiffs' Complaint.

9. Sykes states that the text of the Agreement is contained in the Agreement and denies all allegations contained in Paragraph 9 of the Plaintiffs' Complaint that are inconsistent with the text of the Agreement. Sykes denies any and all remaining allegations contained in Paragraph 9 of the Plaintiffs' Complaint.

10. Sykes states that the text of the Agreement is contained in the Agreement and denies all allegations contained in Paragraph 10 of the Plaintiffs' Complaint that are inconsistent with the text of the Agreement. Sykes denies any and all remaining allegations contained in Paragraph 10 of the Plaintiffs' Complaint.

11. Sykes states that the text of the Agreement is contained in the Agreement and denies all allegations contained in Paragraph 11 of the Plaintiffs' Complaint that are inconsistent with the text of the Agreement. Sykes denies any and all remaining allegations contained in Paragraph 11 of the Plaintiffs' Complaint.

12. Sykes states that the text of the Agreement is contained in the Agreement and denies all allegations contained in Paragraph 12 of the Plaintiffs' Complaint that are inconsistent with the text of the Agreement. Sykes denies any and all remaining allegations contained in Paragraph 12 of the Plaintiffs' Complaint.

13. Sykes admits that Oracle and Cross Country entered into the Amendment attached to the Complaint as <u>Exhibit 2</u> on or about August 1, 1993. Sykes denies any and all remaining allegations contained in Paragraph 13 of the Plaintiffs' Complaint.

14. Sykes states that the text of the Amendment is contained in the Amendment and denies all allegations contained in Paragraph 14 of the Plaintiffs' Complaint that are inconsistent with the text of the Amendment. Sykes denies any and all remaining allegations contained in Paragraph 14 of the Plaintiffs' Complaint.

15. Sykes admits that Cross Country has introduced Sykes to at least one automobile manufacturer and distributor, and that Sykes has entered into contracts with automobile manufacturers and distributors doing business in Canada. Sykes denies any and all remaining allegations contained in Paragraph 15 of the Plaintiffs' Complaint.

16. Sykes admits that it has paid Cross Country commissions pursuant to the Agreement. The remainder of Paragraph 16 of the Plaintiffs' Complaint states a mixture of allegations of fact and conclusions of law. To the extent that Paragraph 16 contains conclusions of law, no response is required; to the extent that a response is required, such conclusions are denied. To the extent that Paragraph 16 of the Plaintiffs' Complaint purports to characterize the Agreement, Sykes states that the text of the Agreement is contained in the Agreement and denies any and all allegations inconsistent with the text of the Agreement. Sykes denies any and all remaining allegations contained in Paragraph 16 of the Plaintiffs' Complaint.

17. Paragraph 17 of the Plaintiffs' Complaint states a mixture of allegations of fact and conclusions of law. To the extent that Paragraph 16 contains conclusions of law, no response is required; to the extent that a response is required, such conclusions are denied. To the extent that Paragraph 17 of the Plaintiffs' Complaint purports to characterize the Agreement, Sykes states that the text of the Agreement is contained in the Agreement and denies any and all allegations inconsistent with the text of the Agreement. Sykes denies any and all remaining allegations contained in Paragraph 17 of the Plaintiffs' Complaint.

18. Paragraph 18 of the Plaintiffs' Complaint states a mixture of allegations of fact and conclusions of law. To the extent that Paragraph 18 contains conclusions of law, no response is required; to the extent that a response is required, such conclusions are denied. To the extent that Paragraph 18 of the Plaintiffs' Complaint purports to characterize the Agreement,

Sykes states that the text of the Agreement is contained in the Agreement and denies any and all allegations inconsistent with the text of the Agreement. Sykes denies any and all remaining allegations contained in Paragraph 18 of the Plaintiffs' Complaint.

19. Sykes restates and reincorporates its answers to Paragraphs 1 through 18 of the Plaintiffs' Complaint as if set forth fully herein.

20. Paragraph 20 of the Plaintiffs' Complaint states a mixture of allegations of fact and conclusions of law. To the extent that Paragraph 20 contains conclusions of law, no response is required; to the extent that a response is required, such conclusions are denied. To the extent that Paragraph 20 of the Plaintiffs' Complaint purports to characterize the Agreement, Sykes states that the text of the Agreement is contained in the Agreement and denies any and all allegations inconsistent with the text of the Agreement. Sykes denies any and all remaining allegations contained in Paragraph 20 of the Plaintiffs' Complaint.

21. Paragraph 21 of the Plaintiffs' Complaint states a mixture of allegations of fact and conclusions of law. To the extent that Paragraph 21 contains conclusions of law, no response is required; to the extent that a response is required, such conclusions are denied. To the extent that Paragraph 21 of the Plaintiffs' Complaint purports to characterize the Agreement, Sykes states that the text of the Agreement is contained in the Agreement and denies any and all allegations inconsistent with the text of the Agreement. Sykes denies any and all remaining allegations contained in Paragraph 21 of the Plaintiffs' Complaint.

22. Paragraph 22 of the Plaintiffs' Complaint states a mixture of allegations of fact and conclusions of law. To the extent that Paragraph 22 contains conclusions of law, no response is required; to the extent that a response is required, such conclusions are denied. To the extent that Paragraph 22 of the Plaintiffs' Complaint purports to characterize the Agreement,

Sykes states that the text of the Agreement is contained in the Agreement and denies any and all allegations inconsistent with the text of the Agreement. Sykes denies any and all remaining allegations contained in Paragraph 22 of the Plaintiffs' Complaint.

23. Sykes restates and reincorporates its answers to Paragraphs 1 through 22 of the Plaintiffs' Complaint as if set forth fully herein.

24. Paragraph 24 of the Plaintiffs' Complaint states a mixture of allegations of fact and conclusions of law. To the extent that Paragraph 24 contains conclusions of law, no response is required; to the extent that a response is required, such conclusions are denied. To the extent that Paragraph 24 of the Plaintiffs' Complaint purports to characterize the Agreement, Sykes states that the text of the Agreement is contained in the Agreement and denies any and all allegations inconsistent with the text of the Agreement. Sykes denies any and all remaining allegations contained in Paragraph 24 of the Plaintiffs' Complaint.

25. Sykes restates and reincorporates its answers to Paragraphs 1 through 25 of the Plaintiffs' Complaint as if set forth fully herein.

26. Sykes admits that it is its position that it no longer has an obligation to pay brokerage fees to Cross Country. Further answering, Sykes states that the text of the Agreement is contained in the Agreement and denies all allegations contained in Paragraph 26 of the Plaintiffs' Complaint that are inconsistent with the text of the Amendment. Sykes denies any and all remaining allegations contained in Paragraph 26 of the Plaintiffs' Complaint.

27. Paragraph 27 of the Plaintiffs' Complaint states a conclusion of law to which no response is required; to the extent that a response is required, Sykes denies same.

28. Paragraph 28 of the Plaintiffs' Complaint states a conclusion of law to which no response is required; to the extent that a response is required, Sykes denies same.

29.     The final unnumbered paragraph of Plaintiffs' Complaint states a demand for relief to which no response is required. To the extent that a response is required, Sykes denies that Cross Country is entitled to the relief that it seeks.

## AFFIRMATIVE DEFENSES

The following affirmative defenses are asserted in the alternative, and the assertion of any defense as an affirmative defense herein is not, and is not intended as, an admission that Sykes has the burden of proof on any such defense or on any related element of the Plaintiffs' claims.

### First Affirmative Defense

Plaintiffs' complaint fails to state a claim for which relief can be granted.

### Second Affirmative Defense

Plaintiffs' claims are barred by the doctrine of laches.

### Third Affirmative Defense

Plaintiffs' claims are barred by the doctrine of waiver.

### Fourth Affirmative Defense

Plaintiffs are estopped from pursuing their claims by their own conduct.

### Fifth Affirmative Defense

The damages suffered by Plaintiffs, if any, are the result of their own conduct or that of third parties over which Sykes has no control.

### Sixth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of unclean hands.

### Seventh Affirmative Defense

Plaintiffs' claims are barred by the applicable statute of limitations.

### Eighth Affirmative Defense

Plaintiffs' claims are barred by their breach of their contractual obligations to the Defendant.

### Ninth Affirmative Defense

Sykes' conduct is justified under the doctrine of set-off.

### Tenth Affirmative Defense

If the plaintiff understood the Agreement terms as it purports, then the Agreement is unenforceable, as it resulted from a mutual mistake of the parties.

### Eleventh Affirmative Defense

The plaintiffs' prayer for relief labeled "c" is overbroad and incapable of enforcement as it is unlimited in time or scope.

## REQUEST FOR RELIEF

WHEREFORE, Sykes respectfully requests, with respect to the Plaintiffs' complaint, that:

1. Plaintiffs' complaint be dismissed in its entirety;

2. Plaintiffs take nothing on their complaint;

3. Judgment be entered against Plaintiffs and in favor of Sykes;

4. Sykes be awarded costs; and

5. Sykes be provided such other and further relief as this Court deems meet and just.

## COUNTERCLAIM OF DEFENDANT SYKES CANADA CORPORATION

Defendant Sykes Canada Corporation ("Sykes"), hereby alleges and states the following in support of its Counterclaim against Plaintiffs Cross Country Motor Club Inc. and Cross Country Motor Club Of California, Inc., (collectively, "Cross Country"). Where necessary, these claims should be construed as being asserted in the alternative to, and as not waiving, any affirmative defense Sykes may have to Cross Country's claims against Sykes.

8

## PARTIES

1.      On information and belief, Cross County Motor Club Inc. is a Massachusetts corporation with a principal place of business located in Medford, Massachusetts.

2.      On information and belief, Cross County Motor Club of California, Inc., is a California corporation with a principal place of business located in Medford, Massachusetts.

3.      Sykes is a Canadian company.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), 28 U.S.C. § 2201, and under this Court's ancillary, pendent and supplemental jurisdiction.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c), in that the counterclaim defendant is doing or transacting business within this judicial district.

## FACTUAL BACKGROUND

6.      Sykes and its predecessors in interest, National Auto League, Inc. ("NAL") and Oracle Service Networks Corporation ("Oracle"), are corporations that were and are involved in the provision of automobile club benefits and/or roadside assistance services to individuals and corporations in Canada. Cross Country is a corporation that was and is involved in the provision of automobile club benefits and/or roadside assistance services to individuals and corporations in the United States.

7.      In or around late 1989, representatives of NAL contacted representatives of Cross Country in Massachusetts to discuss the possibility of entering into a contractual relationship.

8.      On or about March 19, 1990, Cross Country and NAL entered into a Mutual Brokerage Agreement (the "Agreement"). The Agreement stated, among other things, that (i)

NAL desired to expand its business in Canada and Cross Country was willing to assist in such expansion, and (i) Cross country desired to expand its business in the United States and NAL was willing to assist Cross Country in such expansion. A copy of this Agreement is attached hereto as Exhibit 1.

9. The "Whereas" clauses of the Agreement read as follows:

WHEREAS NAL presently provides automobile club benefits ... to individuals and/or corporations ... in Canada.

AND WHEREAS Cross Country presently provides automobile club benefits and/or roadside assistance services ... to individuals and/or corporations ... in the United States of America.

AND WHEREAS, NAL desires to expand its business in Canada and Cross Country is willing to assist NAL in such expansion.

AND WHEREAS Cross [] Country desires to expand its business in the United States and NAL is willing to assist Cross Country in such expansion.

10. Paragraph 4 of the Agreement provides as follows:

A brokerage fee shall be payable in the amount equal to ten percent (10%) of the sum actually received pursuant to any contract entered into resulting, in whole or in part, from the efforts of the broker. A contract shall be conclusively deemed to have resulted form the efforts of the broker (1) in the case of a contract entered into by NAL with any business described on Exhibit "B" and (ii) in the case of any contract entered into by Cross Country with any business described on Exhibit "A". Commissions shall be payable over the full term of the Agreement entered into and any **extensions** thereof. Commissions shall be payable over the full term of any contract entered into during the term of this Agreement and over the full term of any contract, entered into during the term of this Agreement and over the full term of any **extension** of such contract even though the term of such contract, as extended, may extend beyond the expiration or other termination of this Agreement. A contract entered into within six (6) months after the expiration or other termination of a contract descried in the proceeding sentence shall be deemed to be an extension thereof even though the terms of such contract may differ from the original contract and commissions shall be payable with respect thereto, except that commissions shall be payable only during the first five (5) years of such contract.

(emphasis added).

11.     Paragraph 8(B) of the Agreement provides that "[a]ny agreement entered into by Cross Country with any business listed in Exhibit 'A' during the one (1) year period following the expiration or other termination of this Agreement which was not a business with which Cross Country had an agreement prior to the expiration or other termination of this Agreement, shall be deemed to have been entered into during the term of this Agreement so that a commission shall be payable to NAL, but only for the first five (5) years of the term of such agreement."

12.     On or about August 1, 1993, Oracle and Cross Country entered into a First Amendment of Agreement (the "Amendment"). A copy of the Amendment is attached hereto as Exhibit 2.

13.     Pursuant to the Amendment, the brokerage fees to be paid pursuant to ¶ 4 of the Agreement were changed from ten percent to five percent and the term of the Agreement was extended to December 31, 2000.

14.     Pursuant to the Agreement, Cross Country has paid some commissions to NAL and its successors in interest for certain contracts they have entered into with consumer finance companies. However, Cross Country has stated to Sykes that it has not paid certain payments called for by the Agreement. This refusal to pay was unilateral, without prior notice, and in breach of the Agreement. On information and belief, Cross Country has breached the Agreement on other occasions by failing to make other payments due to Sykes.

## COUNT I
### (Breach of Contract)

15. Sykes restates and realleges the allegations of Paragraphs 1-14 above as if set forth fully herein.

16. Pursuant to the Agreement, Cross Country agreed to pay Sykes brokerage fees for contracts entered into by Sykes with any business listed on Exhibit A to the Agreement.

17. Cross Country has stated that it failed to pay Sykes brokerage fees to which Sykes is entitled under the Agreement.

18. By failing and refusing to pay Sykes for payments due under the Agreement, Cross Country is in breach of its contractual obligations to Sykes.

WHEREFORE, Sykes demands the relief set forth below.

## COUNT II
### (Declaratory Relief Pursuant to 28 U.S.C. § 2201)

19. Sykes restates and realleges the allegations of Paragraphs 1-18 above as if set forth fully herein.

20. Cross Country has demanded commissions from Sykes, and filed suit against Sykes, based on an unreasonable and untenable interpretation of Sykes' obligations under the Agreement. For example, Cross Country has taken the position that Sykes, under ¶ 4 of the Agreement, owes Cross Country commissions in perpetuity on any relationship that it has with any automobile manufacturer or dealer regardless of the termination of the Agreement.

21. Such an interpretation of Sykes' obligations under the Agreement was never intended by Sykes when the Agreement was formed, and is supported neither by the language of the Agreement nor by the extrinsic evidence regarding the formation of the contract. As reflected in the language of ¶ 4 of the Agreement, the parties contemplated that the Agreement

itself might be subject to multiple "extensions," plural, but that each individual contract on which either party owes commissions was subject only to a single "extension."

22.  Similarly, notwithstanding the focus of the Agreement on "automobile club benefits and/or roadside assistance services," see Agreement, p. 1, Cross Country has taken the position that Sykes owes commissions on all contracts with automobile dealers or manufacturers, regardless of whether the services involved were roadside or non-roadside services. Again, such an interpretation is inconsistent with the language of the Agreement and the extrinsic evidence regarding the formation and performance of the contract.

23.  There is an actual case and controversy between the parties concerning their rights under the Agreement, on which a declaratory judgment is necessary and appropriate.

24.  Sykes is entitled to a declaration that Cross Country's interpretation of the Agreement as asserted in this action is not valid, including but not limited to a declaration that, under the Agreement, Sykes' obligation to pay commissions to Cross Country on a contract with an automobile dealer or manufacturer ended no later than the termination of the first extension of such a contract, and that Sykes is not obliged to pay commissions on non-roadside assistance service contracts.

WHEREFORE, Sykes demands the relief set forth below.

COUNT III
(Rescission/Cancellation of Contract)

25.  Sykes restates and realleges the allegations of Paragraphs 1-24 above as if set forth fully herein.

26.  At the time of the formation of the Agreement, Sykes did not know and had no reason to know about Cross Country's interpretation of the scope of the parties' obligation to pay commissions, which interpretation, as discussed above, was wholly inconsistent with Sykes'

13

interpretation of that obligation and the language of the Agreement. The parties' fundamentally different and inconsistent positions were only revealed after the termination of the Agreement.

27. In the alternative to the allegations and claims for relief set forth above, if the Court should determine that both Sykes and Cross Country intended and understood the parties' obligations under the Agreement in a reasonable, but different and conflicting, manner, the Court should find that the Agreement was the product of a mutual mistake.

28. Accordingly, in the alternative to the claims for relief set forth above, the Agreement should be cancelled and/or rescinded, to reflect the fact that there was no meeting of the minds with respect to the parties' obligations to pay commissions, and a mutual mistake as to the meaning of the Agreement.

29. Because the amounts paid by Sykes to Cross Country under the Agreement exceed the amounts paid by Cross Country to Sykes, and because no other form of tangible consideration was exchanged between the parties, the net effect of rescission will be a payment from Cross Country to Sykes, and it would not be necessary for Sykes to tender or deliver any payment to Cross Country.

WHEREFORE, Sykes demands the relief set forth below.

## **DEMANDS FOR RELIEF**

WHEREFORE, Sykes respectfully requests, with respect to its Counterclaims, that:

1. Sykes be awarded damages in an amount to be determined at trial, plus interest;

2. A declaratory judgment be entered in favor of Sykes, declaring that Cross Country's interpretation of the Agreement as asserted in this action is not valid, including but not limited to a declaration that, under the Agreement, Sykes' obligation to pay commissions to Cross Country on a contract with an automobile dealer or manufacturer ended no later than the

termination of the first extension of such a contract, and that Sykes is not obliged to pay commissions on non-roadside services;

3. Sykes be awarded fees, costs and expenses, as appropriate; and

4. Sykes be provided such other and further relief as this Court deems meet and just;

OR, IN THE ALTERNATIVE, that:

1. The Court cancel and/or rescind the Agreement, issuing such orders as are necessary to restore the parties to the status quo ex ante and defend Sykes' interests in equity, including but not limited to a restitution of funds to Sykes plus interest;

2. Sykes be awarded fees, costs and expenses, as appropriate; and

3. Sykes be provided such other and further relief as this Court deems meet and just.

**Sykes hereby requests a jury trial on its Counterclaim.**

Respectfully submitted,
SYKES CANADA CORPORATION,
By its attorneys,

_____
Brenda M. Cotter (BBO #548004)
Jeffrey P. Hermes (BBO #637952)
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
(617) 856-8200

DATED: August 19, 2005

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of August 2005, I served by hand a true and accurate copy of the within Defendant's Answer and Counterclaim upon:

Victor H. Polk, Esquire
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110

_____
Brenda M. Cotter